**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LUIS MUJICA-MARQUEZ, | No. 4:26-CV-00623 |
| Petitioner, | (Chief Judge Brann) |
| v. | |
| ANGELA HOOVER, *et al.*, | |
| Respondents. | |

**MEMORANDUM OPINION**

**MAY 27, 2026**

Luis Mujica-Marquez has been detained by the United States Department of Homeland Security, Immigration and Customs Enforcement since March 3, 2026. Earlier this year, Mujica-Marquez filed a petition for a writ of habeas corpus, asserting that his detention without a bond hearing violated his due process rights. This Court granted that petition and directed the Government to provide Mujica-Marquez with an individualized bond hearing at which he may present evidence.

On April 7, 2026, an immigration judge ("IJ") held a bond hearing and denied bond for Mujica-Marquez. Mujica-Marquez now moves for this Court to enforce its judgment. A review of the available evidence demonstrates to the Court that, while the bond hearing appears facially to have been individualized, the analysis provided by the IJ was insufficient to satisfy the requirements of the Due Process Clause. Consequently, the Court will grant Mujica-Marquez's motion.

## I.    BACKGROUND

Mujica-Marquez, a citizen and native of the Bolivarian Republic of Venezuela, entered the United States of America in July 2022; he was detained but subsequently released from custody.[1] On March 3, 2026, Mujica-Marquez was arrested and ICE initially refused him a bond hearing, asserting that he was subject to mandatory detention.[2]

In March of 2026, Mujica-Marquez filed a 28 U.S.C. § 2241 petition asserting that he was entitled to a bond hearing pursuant to 8 U.S.C. § 1226(a).[3] This Court agreed, holding that Mujica-Marquez was being improperly detained under 8 U.S.C. § 1225(b) and that the denial of a bond hearing violated his due process rights.[4] Consequently, this Court ordered that the Government "provide Mujica-Marquez with an individualized bond hearing at which he may present evidence."[5]

On April 7, 2026, an IJ held a bond hearing and denied bond for Mujica-Marquez.[6] At that hearing, the IJ noted that he had reviewed the evidence submitted and heard arguments from both Mujica-Marquez and the Government.[7] At the

---

[1]    Doc. 1 at 7.
[2]    *Id.*
[3]    *See* Doc. 1.
[4]    Docs. 10, 11.
[5]    Doc. 11.
[6]    Doc. 19-4 at 2; Doc. 19-6.
[7]    Doc. 19-6 at 3-8.

conclusion of the hearing, the IJ determined that Mujica-Marquez would not be a danger if released on bond, but concluded that he does present a flight risk.[8]

In reaching the conclusion that Mujica-Marquez presents a flight risk that may not be mitigated by any form of bond, the IJ recognized that Mujica-Marquez presented several positive factors, including that his spouse and mother-in-law are both United States citizens, he was complying with ICE check-ins until they were discontinued, and had paid some, but not all, taxes for his income earned within the United States.[9] However, the IJ was concerned that: (1) Mujica-Marquez's illegal entry demonstrated "a lack of . . . compliance with US immigration laws right from his entry"; (2) Mujica-Marquez is a relatively recent entrant; and (3) his efforts at relief from deportation were speculative as he may have eligibility issues related to the way that he entered the country.[10] The IJ therefore found "in the totality of the circumstances that [Mujica-Marquez] is a flight risk . . . and no amount of bond could mitigate that . . . risk of flight."[11]

On April 10, 2026, Mujica-Marquez filed this motion to enforce the Court's judgment.[12] He asserts that the bond hearing failed to satisfy either this Court's Order or the Due Process Clause of the United States Constitution for two reasons. First,

---

[8]   *Id.* at 8.
[9]   *Id.*
[10]  *Id.*
[11]  *Id.*
[12]  Doc. 16.

he argues that the IJ improperly placed the burden of proof on Mujica-Marquez, rather than the Government.[13] Second, he contends that the IJ failed to provide an individualized assessment in relation to the conclusion that Mujica-Marquez presents a flight risk, as one reason provided is legally erroneous, and two are generalized concerns.[14]

Respondents contend that this Court lacks jurisdiction to consider Mujica-Marquez's motion and, in any event, the motion fails on its merits.[15] Respondents first argue that 8 U.S.C. § 1226(e) strips this Court of jurisdiction to review the IJ's bond hearing determination, and that Mujica-Marquez failed to exhaust his administrative remedies, which further bars consideration of the motion.[16] Second, they assert that Mujica-Marquez received an individualized bond hearing in accordance with the Court's Order, and Mujica-Marquez merely seeks to relitigate the merits of the bond hearing.[17]

Mujica-Marquez has filed a reply brief, rendering this matter ripe for disposition.[18] For the reasons discussed below, the motion will be granted.

---

[13]    *Id.* at 4.
[14]    *Id.* at 4-7.
[15]    Doc. 19.
[16]    *Id.* at 6-10.
[17]    *Id.* at 10-16.
[18]    Doc. 21.

## II.   DISCUSSION

### A.   Jurisdiction

The Government first argues that this Court may not examine the IJ's bond determination pursuant to 8 U.S.C. § 1226(e).[19] That statute provides that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."[20]

Despite that rather definitive language, the United States Court of Appeals for the Third Circuit has explicitly held that "[n]othing in 8 U.S.C. § 1226(e) prevents [courts] from deciding whether the immigration officials had statutory authority to impose mandatory detention" and that "Section 1226(e) does not limit habeas jurisdiction over constitutional claims or questions of law."[21] Stated differently, although courts "lack jurisdiction to review any discretionary determinations underlying the IJ's bond decision, [they] may review whether the bond hearing was fundamentally unfair."[22]

And beyond a court's ability to examine the constitutional adequacy of a bond hearing, it is well established that a "court has the inherent power to enforce its own orders."[23] Courts therefore have "continuing jurisdiction to address alleged

---

[19]   Doc. 19 at 6-7.
[20]   8 U.S.C. § 1126(e).
[21]   *Sylvain v. Att'y Gen. of U.S.*, 714 F.3d 150, 155 (3d Cir. 2013) (quoting *Singh v. Holder,* 638 F.3d 1196, 1202 (9th Cir. 2011)).
[22]   *Ghanem v. Warden Essex Cnty. Corr. Facility*, No. 21-1908, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022).
[23]   *E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 194 (3d Cir. 2020).

noncompliance with [a] conditional writ of habeas corpus."[24] Mujica-Marquez challenges both the constitutional sufficiency of the bond hearing and maintains that the hearing failed to comply with the Court's Order granting his petition for a writ of habeas corpus.[25] Both arguments fall within exceptions to § 1226(e)'s bar on review of a bond determination, and that Section therefore does not divest this Court of jurisdiction to consider Mujica-Marquez's motion.

The Government next argues that Mujica-Marquez has failed to exhaust his administrative remedies related to the bond hearing, and therefore this Court should decline to review the motion.[26] As other courts have discussed, whether an individual must exhaust administrative remedies by appealing a denial of bond is an "area of unsettled law in the Third Circuit and in this District" and "there are several decisions in this district reaching conflicting conclusions about whether exhaustion is required."[27]

The Court need not determine whether exhaustion of administrative remedies is required because, even when exhaustion is necessary, courts will not enforce that requirements if exhaustion "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative

---

[24] *Gibbs v. Frank*, 500 F.3d 202, 205 (3d Cir. 2007) (citing *Phifer v. Warden,* 53 F.3d 859, 865 (7th Cir. 1995)).
[25] *See* Doc. 16.
[26] Doc. 19 at 7-10.
[27] *Shonhai v. Lowe*, No. CV 3:24-229, 2026 WL 538865, at *10 (M.D. Pa. Feb. 26, 2026).

procedure is clearly shown to be inadequate to prevent irreparable harm."[28] As it relates to an appeal of the denial of bond, futility is apparent because "'it is not at all clear that the BIA could evaluate the legality of the IJ's bond determination in relation to [a district court's order]—the BIA has, for example, consistently refused to reach and decide constitutional questions.'"[29]

Assuming that Mujica-Marquez was required to exhaust his administrative remedies, that requirement would be excused here for two reasons. First, as outlined above, exhaustion would be futile since the Board of Immigration Appeals ("BIA") likely would not take up the constitutional question. Second, as discussed below, the IJ's actions violated Mujica-Marquez's due process rights. Accordingly, the Court finds that Mujica-Marquez was not required to exhaust his administrative remedies, and it has jurisdiction to consider the merits of this motion.

### B.    Merits

Turning to the merits of Mujica-Marquez's motion, Mujica-Marquez asserts that the bond hearing was deficient for two reasons. First, he asserts that the IJ improperly placed the burden of proof on him, rather than the Government.[30]

---

[28]    *Id.* (quoting *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988)).
[29]    *Id.* (quoting *Y.S.G. v. Andrews*, No. 25-cv-1884, 2025 WL 2979309, at *7 (E.D. Cal. Oct. 22, 2025)).
[30]    Doc. 16 at 4.

Second, Mujica-Marquez asserts that the reasons provided for denying bond are insufficiently particularized.[31]

The Government responds that the IJ conducted an individualized bond hearing wherein he considered the evidence and arguments before finding that bond was not appropriate.[32] It argues that the burden was properly placed on Mujica-Marquez pursuant to 8 U.S.C. § 1226(a), and Mujica-Marquez simply attempts to reargue the merits of the bond hearing, which is beyond the purview of this Court to consider.[33]

"Throughout all phases of deportation proceedings, petitioners must be afforded due process of law."[34] The Due Process Clause guarantees individuals "an opportunity to be heard at a meaningful time and in a meaningful manner."[35] "This guarantee comprises three key protections: (1) factfinding based on a record produced before the decisionmaker and disclosed to him or her; (2) the opportunity to make arguments on his or her own behalf; and (3) an individualized determination of his or her interests."[36] "In other words, petitioners must receive a full and fair hearing that allows them a reasonable opportunity to present evidence on their behalf."[37]

---

[31]   *Id.* at 4-5.
[32]   Doc. 19 at 10.
[33]   *Id.* at 13-16.
[34]   *Serrano-Alberto v. Att'y Gen. U.S.*, 859 F.3d 208, 213 (3d Cir. 2017).
[35]   *Id.* (internal quotation marks omitted).
[36]   *Id.* (brackets and internal quotation marks omitted).
[37]   *Id.* (internal quotation marks omitted).

Importantly, for a bond hearing to adequately provide an individualized determination, any evidence relied upon by an IJ "must be individualized and support a finding that continued detention is needed to prevent him from fleeing or harming the community."[38] This means that "[m]echanistic reliance on factors that are common to all § 1226([a]) detainees will not suffice."[39]

As an initial matter, the Court cannot conclude that the IJ erroneously held that Mujica-Marquez bore the burden of proof. This Court held that Mujica-Marquez was entitled to a bond hearing pursuant to 8 U.S.C. § 1226(a),[40] and the law is clear that, in a bond hearing "under § 1226(a)[,] the burden remains on the detainee at all times."[41] The line of Third Circuit cases addressing the burden of proof for prolonged detention under 8 U.S.C. § 1226(c) is simply inapplicable here.[42] Consequently, the IJ properly required that Mujica-Marquez prove he was entitled to bond.[43]

Nevertheless, Mujica-Marquez's bond hearing was constitutionally deficient because the IJ failed to provide an individualized determination related to Mujica-

---

[38] *Santos v. Lowe*, No. 1:18-CV-1553, 2020 WL 4530728, at *3 (M.D. Pa. Aug. 6, 2020) (quoting *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 214 (3d Cir. 2020)).

[39] *Id.* (quoting *Wilkins v. Doll*, No. 1:17-CV-2354, 2018 WL 3388032, at *2 (M.D. Pa. July 12, 2018).

[40] Doc. 10 at 6.

[41] *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 279 (3d Cir. 2018).

[42] *See id.*

[43] *See Modebadze v. Soto*, No. CV 26-1687 (MAS), 2026 WL 1067835, at *1 (D.N.J. Apr. 17, 2026) ("Because the burden of proof under section 1226(a) remains on aliens at all times . . . the immigration judge did not misapply the standard of proof by requiring Petitioner to show that he was not a flight risk at his bond hearing").

Marquez's flight risk. The IJ purported to examine and weigh the relevant factors for and against bond[44] and to determine that the factors weighed against granting bond.[45] However, the IJ relied on only three considerations to find that Mujica-Marquez is a flight risk: he entered the country unlawfully; he had only been in the United States for approximately four years, which the IJ termed "pretty recent"; and his grounds for relief from removal are speculative.[46]

The first and third grounds are easily dismissed. As to the first, although Mujica-Marquez entered the country illegally, this factor is common to nearly all individuals receiving a bond hearing pursuant to § 1226(a), and therefore cannot support the denial of bond, as it is far too generalized a concern.[47] With regard to the third consideration, as Mujica-Marquez notes—and Respondents do not contest— the IJ appears to have misapprehended the law in deciding that Mujica-Marquez's grounds for relief from removal are speculative; rather he is eligible for an adjustment of status related to his I-130 Petition that is based on the citizenship of his wife.[48]

---

[44]  The BIA has set forth nine factors relevant to a bond determination, although an IJ "has broad discretion in deciding the factors that he or she may consider in custody redeterminations" and "may choose to give greater weight to one factor over others, as long as the decision is reasonable." *In Re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006).

[45]  *See* Doc. 19-6.

[46]  *Id.* at 9.

[47]  *Santos*, 2020 WL 4530728, at *3.

[48]  Doc. 16 at 5.

The IJ's second consideration, that Mujica-Marquez had only been in the United States for less than four years, is the only potentially proper consideration. However, even that consideration does not support the IJ's decision for several reasons.

First, the IJ provides no basis to conclude that nearly four years—a facially significant amount of time—qualifies as a short duration, and he provides no legal basis for such a conclusion.[49] And the reason why a short duration of residence is relevant in a bond determination, that such a person will have "less established ties to the community" and therefore be a greater flight risk,[50] are not present here. Mujica-Marquez is married to a United States citizen, has lived in the same community nearly the entire time that he has resided in the United States, and has consistently worked within that community.[51] This indicates that consideration of his duration of residence is nearly irrelevant.

Most importantly, even if Mujica-Marquez's residence were a proper consideration, it alone cannot justify denial of bond, as "[t]he Court is unaware of authority suggesting that a brief residency, with less established ties to the community, is dispositive. Therefore, this [factor] must be weighed in the context of

---

[49]    *Cf. Becerra-Jimenez v. I.N.S.*, 829 F.2d 996, 998 (10th Cir. 1987) (six-year residence is a positive factor weighing in favor of movant).

[50]    *United States v. Mejias-Mejias*, 771 F. Supp. 3d 688, 693 (D. Md. 2025*). See also United States v. Molina-Orantes*, 798 F. Supp. 3d 1204, 1216-17 (D. Or. 2025).

[51]    Doc. 19-6 at 6.

other considerations."[52] This is crucial because denial of bond based solely on the fact that an individual resided in the country for just under four years would create a *per se* rule that would mandate the detention of any individual who has been in the United States for less than a certain period of time, in direct contravention of the guarantee that all detainees receive an individualized determination.[53]

In sum, the IJ's determination that Mujica-Marquez was a flight risk was supported by no legitimate evidence or considerations. While this Court may not second guess an IJ's determination, at the same time an IJ may not deny bond for facially incorrect reasons. Here, the absence of any legitimate support for the IJ's decision means "the exercise of discretion in denying bond was so arbitrary that it . . . offend[ed] fundamental tenets of due process."[54]

Consequently, the Court must conclude that the bond hearing below violated Mujica-Marquez's due process rights and failed to comply with this Court's Order. This Court will therefore grant Mujica-Marquez's motion.

## C.    Remedy

Having concluded that Mujica-Marquez's bond hearing failed to comply with the Court's Order and was constitutionally deficient, this Court must determine what

---

[52]  *Mejias-Mejias*, 771 F. Supp. 3d at 693.
[53]  *Serrano-Alberto*, 859 F.3d at 213.
[54]  *Romero v. Ogle*, No. 1:21-CV-01192, 2021 WL 8362027, at *3 (M.D. Pa. Nov. 12, 2021) (quoting *Serrano-Vargas v. Lowe*, No. CV 3:17-0801, 2019 WL 3003382, at *2 (M.D. Pa. July 10, 2019)).

remedy is appropriate. Respondents have "now violated [Mujica-Marquez's] due process rights twice: first when [Respondents] initially detained him unlawfully under § 1225(b), and then again when [Respondents] deprived him of a constitutionally adequate bond hearing."[55] Moreover, Mujica-Marquez has been detained by ICE for nearly three months, all of which indicates that "release is the only just remedy."[56] The Court therefore finds that the appropriate remedy in this matter is to direct that Respondents release Mujica-Marquez from custody.

## III. CONCLUSION

For the foregoing reasons, Mujica-Marquez's motion to enforce the judgment will be granted, and he will be ordered released from custody.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[55] *Zheng v. Rokosky*, No. 26-CV-01689, 2026 WL 800203, at *8 (D.N.J. Mar. 23, 2026).
[56] *Id.* at *11.

13